UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-10978-GAO

RENT-A-PC, INC., d/b/a/
SMARTSOURCE COMPUTER & AUDIO VISUAL RENTALS,
Plaintiff,

v.

ROBERT MARCH, RONALD SCHMITZ, AARON COLE, and CCR SOLUTIONS, INC.,
Defendants.

OPINION AND ORDER
May 28, 2013

O'TOOLE, D.J.

The plaintiff Rent-A-PC, Inc. ("SmartSource") asserts various contract and tort claims against former employee defendants March, Cole, and Schmitz, and their new employer CCR Solutions, Inc. SmartSource has moved for a preliminary injunction to prevent the defendants from continuing their allegedly unlawful activities.

**I.    Background**

SmartSource is a company that provides short term rentals of audio visual, computer, and other equipment. March, a Regional Sales Manager for the company, was terminated in October 2012. He joined CCR the following month. Cole, an Account Executive, and Schmitz, a National Project Manager, resigned in January 2013 and joined CCR at some point thereafter.

SmartSource sent cease-and-desist letters to all the defendants, asserting that each of the individual defendants had entered into restrictive covenant agreements with SmartSource and putting CCR on notice of such agreements. The defendants did not respond to any of the letters.

On April 22, 2013, SmartSource filed suit and moved for injunctive relief, claiming that the individual defendants had breached their employment agreements and that they and CCR had tortiously interfered with SmartSource's customer relationships and workforce. SmartSource alleges that March solicited Cole to join CCR, and then March and Cole together solicited Schmitz. SmartSource further contends that CCR is now working with at least six former SmartSource customers and that in soliciting them, the individual defendants inevitably disclosed confidential information. In response, the defendants argue, among other things, that the restrictive covenants at issue are unenforceable or abrogated, that the covenants have not been breached, and that they have not engaged in raiding or unfair competition.

## II.     Legal Standard

"A preliminary injunction is an extraordinary and drastic remedy." Munaf v. Geren, 553 U.S. 674, 676 (2008) (internal quotations omitted). The issuance of a preliminary injunction depends on "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions . . . ; and (4) the effect (if any) of the court's ruling on the public interest." EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 581 (1st Cir. 2001) (citations omitted). "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) (citations omitted).

## III.    Discussion

### A.     Contract Claims Against Individual Defendants (Counts I, II, III)

March was hired by SmartSource in June 2006 as a Senior Account Executive. Prior to commencing employment, he signed an offer letter containing the following provision:

2

> Confidentiality: During your employment or in the event that you leave our employ, you agree to respect the confidentiality of information pertaining to the business of Rent-A-PC, Inc. You further agree not to use such confidential information in a manner harmful to Rent-A-PC, Inc. including, but not limited to, not competing with Rent-A-PC, Inc. for a period of one year within 60 miles of any Rent-A-PC location.

(March Affidavit, Ex. 1 (dkt. no. 17-1).)

In March 2007, March was promoted to Branch Sales Manager, and in April 2008, he was promoted to Regional Sales Manager. He was then promoted in September 2010 to Regional General Manager, and again in September 2012 to Regional Sales Manager. With each promotion, March's job responsibilities and compensation changed, and it is undisputed that March's final position at SmartSource was significantly different from his first position in terms of scope, authority, duties, and pay.

In F. A. Bartlett Tree Expert Co. v. Barrington, 233 N.E.2d 756 (Mass. 1968), the defendant signed a non-compete agreement upon his hire as a salesman in 1948. In 1960, his employer introduced a new sales plan, which "made substantial changes in the defendant's remuneration and in his sales area." Id. at 758. In 1965, the defendant was promoted to "district sales manager in a new area with a new basis of remuneration." Id. The Supreme Judicial Court upheld the lower court's ruling that the 1948 non-compete agreement was no longer operative when the defendant resigned in 1966 because his relationship with his employer had changed so materially that the original agreement had been effectively replaced, not merely modified. See id.; cf. AFC Cable Sys., Inc. v. Clisham, 62 F. Supp. 2d 167, 173 (D. Mass. 1999) (non-compete agreement voided where employee's "title changed, his pay structure changed, his authority increased, his unsupervised time on the road increased, and the focus of his work changed from investigating a potential market to making sales.").

F. A. Bartlett is a significant problem for the plaintiff. March underwent several material changes to his employment, but he did not sign any additional restrictive covenant agreements. "Each time an employee's employment relationship with the employer changes materially such that they have entered into a new employment relationship a new restrictive covenant must be signed." Lycos, Inc. v. Jackson, 2004 WL 2341335, at *3 (Mass. Super. Aug. 25, 2004). Although this is not the occasion for a definitive ruling, it may well be that, under F.A. Bartlett, March's 2006 confidentiality agreement has been abrogated, and he is not bound by any restrictive covenants. SmartSource has not shown a sufficient likelihood of success on the merits of its claims involving March to obtain injunctive relief.

Similarly, Cole experienced a material change in his employment relationship between the time he entered into the restrict covenants that SmartSource seeks to enforce and his resignation. He initially worked for All Service Computer Rental, Inc. ("ASCR"), first in the inventory department and then in the sales department. He signed an agreement with ASCR in 2002 containing non-disclosure, non-competition, and non-solicitation provisions, at which time he was an outside sales person.

SmartSource acquired ASCR in 2003. Although Cole's official title never changed, it appears from the materials submitted in connection with the present motion that his duties, authority, and compensation may have changed substantially. As of his resignation, he had become "one of SmartSource's most successful account executives, earning approximately $160,900 . . . in base pay in 2012" and was "the face of SmartSource to many of its customers." (Am. Compl. ¶¶ 42, 43 (dkt. no. 7).) Under F.A. Bartlett, such material changes could well mean that Cole's 2002 agreement with ASCR was no longer in effect. What is more, Cole's agreement was with ASCR, which was much smaller than SmartSource and much more limited in scope.

4

Because his intent was to enter into restrictive covenants with this smaller company, it would be inequitable to enforce these covenants against him in relation to SmartSource. Cf. Getman v. USI Holdings Corp., 2005 WL 2183159, at *2 (Mass. Super. Sept. 1, 2005) ("[Getman] did not agree not to compete with a much larger insurance brokerage firm such as USI. Since the scope of the non-compete provision was materially changed when USI purchased Hastings-Tapley, this Court finds that it may not be enforced against Getman.").

As for Schmitz, the agreement that SmartSource seeks to enforce is a 2008 offer letter, which Schmitz signed after SmartSource acquired his prior employer A.D. Handy. The offer letter included confidentiality and non-solicitation provisions, but it did not contain a non-compete provision barring Schmitz from working for a competitor company upon termination of his employment at SmartSource. Schmitz offers evidence that the A.D. Handy employees bargained with SmartSource's then-President to remove identical non-solicitation provisions from their offer letters, although his offer letter was not changed.

Schmitz's agreement would not be abrogated simply because other A.D. Handy employees bargained to have their non-solicitation provisions removed. The circumstances do suggest, however, that although the restriction may be legally enforceable, it may yet be inequitable to enforce it.

In any event, SmartSource has failed to show that Schmitz is in breach of the agreement. SmartSource alleges that Schmitz has solicited SmartSource customers and, in doing so, has improperly disclosed confidential information. The only factual allegation offered in support is that Schmitz was recently observed working for CCR at the John F. Kennedy Library, a former SmartSource customer, which is insufficient to establish a likelihood of success in proving breach. Further, in his affidavit, Schmitz explains the circumstances surrounding his resignation

and his limited communications with the Library, including communications made with the approval of and in the presence of his supervisor at SmartSource. SmartSource has simply not met the requisite showing of likelihood of success on the merits as to the contract claim against Schmitz.

### B. Tortious Interference Claims (Counts IV, V, VI, VIII, IX, XIII)

To prove tortious interference, a plaintiff must establish: "(i) the existence of a business relationship between the plaintiff and a third party, (ii) of which the defendant is aware and (iii) with which he intentionally and improperly interferes, (iv) causing an impairment of the business relationship, to the plaintiff's detriment." Bennett v. Saint-Gobain Corp., 507 F.3d 23, 33 (1st Cir. 2007) (citations omitted). SmartSource alleges that March and CCR intentionally and improperly interfered with its contractual relationships with employees by encouraging them to leave SmartSource and work for CCR instead. However, SmartSource provides insufficient evidence to support this allegation. Without broad speculation, the Court cannot determine that SmartSource is likely to succeed on these claims.

### C. Chapter 93A and Unfair Competition Claims (Counts VII, X, XI, XII)

The same is true of these claims because they are premised on the factual allegation that March, Cole, and CCR intentionally interfered with Cole and Schmitz's employment agreements. In light of the dearth of evidence of intentional interference, SmartSource is not likely to prevail on these claims.

**IV.** **Conclusion**

SmartSource has not established a likelihood of success on the merits as to any of its claims. Accordingly, it is unnecessary to address the other prerequisites to obtaining a preliminary injunction.

The Amended Motion (dkt. no. 8) for a Temporary Restraining Order and Preliminary Injunction is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge